## MELVIN BASHAM v. STATE.

No. A-7320. Opinion Filed April 26, 1930.
(287 Pac. 761.)

Howe & Douglass and J. H. Warren, for plaintiff in error.

Edwin Dabney, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

EDWARDS, P. J.   The plaintiff in error, hereinafter called defendant, was convicted in the district court of Choctaw county of the crime of murder, and his punishment fixed at life imprisonment.

Defendant presents but one question by this appeal; that is, the contention that the information charges manslaughter and not murder, and that the court was without jurisdiction to submit the crime of murder or to render judgment upon the verdict of the jury finding defendant guilty of murder.   The charging part of the information is as follows:

"* * * That he, the said Melvin Basham, did then and there wilfully, wrongfully, unlawfully, intentionally and feloniously make an assault upon the person of one Jim Gladden with a deadly weapon, to-wit: a shotgun, with the unlawful and felonious intent upon the part of

him the said Melvin Basham, then and there to kill and murder the said Jim Gladden, and he, the said Melvin Basham, did then and there wilfully, wrongfully, unlawfully, intentionally and feloniously shoot and mortally wound him, the said Jim Gladden with said shotgun, with the unlawful and felonious intent upon the part of him, the said defendant then and there to kill and murder him, the said Jim Gladden, from the effects of which wounds, he the said Jim Gladden, did die, as was intended by the said Melvin Basham he should do, contrary," etc.

Section 1733, Comp. Stat. 1921, subdivision 1, defines murder as follows:

"Homicide is murder in the following cases: First. When perpetrated without authority of law and with a premeditated design to effect the death of the person killed, or of any other human being."

The other subdivisions of this section are not applicable. Section 1740, Comp. Stat. 1921, defines manslaughter in the first degree as follows:

"* * * First. When perpetrated without a design to effect death by a person while engaged in the commission of a misdemeanor.

"Second. When perpetrated without a design to effect death, and in a heat of passion, but in a cruel and unusual manner, or by means of a dangerous weapon; unless it is committed under such circumstances as constitute excusable or justifiable homicide.

"Third. When perpetrated unnecessarily either while resisting an attempt by the person killed to commit a crime, or after such attempt shall have failed."

Section 1735, Comp. Stat. 1921, reads:

"A design to effect death sufficient to constitute murder may be formed instantly before committing the act by which it is carried into execution."

The trial court instructed the jury on the law of murder. Defendant did not except, but during the second argument of counsel for defendant, he presented a request for an instruction advising the jury that defendant could not be convicted of murder, but could be convicted of no higher crime than manslaughter in the first degree, or that he be acquitted. This was refused, and defendant excepted, and the point was next raised in a motion in arrest of judgment.

The information in the instant case does not follow the language of the statute and allege that the homicide was committed "with a premeditated design to effect the death," etc., but does allege that it was committed "with a deadly weapon * * * with the unlawful and felonious intent upon the part of him the said Melvin Basham * * * to kill and murder the said Jim Gladden * * * and did mortally wound him * * * from * * * which * * * said Jim Gladden did die as was intended by the said Melvin Basham he should do."

Defendant contends that an allegation of premeditated design is essential to charge the crime of murder under the first subdivision of section 1733, Comp. Stat. 1921, supra, citing numerous authorities, among them: Jewell v. Territory, 4 Okla. 53, 43 Pac. 1075; Barker v. Territory, 15 Okla. 22, 78 Pac. 81; Pamplin v. State, 21 Okla. Cr. 140, 205 Pac. 521. It is necessary to allege a premeditated design in order to charge the crime of murder, yet it is not necessary that the words "premeditated design" be used; the allegation may be made by words of similar import. Fooshee v. State, 3 Okla. Cr. 666, 108 Pac. 554; State v. Underwood, 17 Okla. Cr. 443, 190 Pac. 281; Martin v. State, 35 Okla. Cr. 248, 250 Pac. 552. It is better pleading to follow the approved forms, but, if the language used is equivalent to, or is of the same import as, the

phrase "with a premeditated design to effect the death," as used in the statute, the information sufficiently charges murder.

We have not traced the history of the term "premeditated design" from its first use in criminal statutes, but an examination of the decisions in the United States discloses that the term formerly was used to describe the state of mind of one who had deliberated or thought over or meditated on a homicide before it was committed; that is, a killing with a "premeditated design" differed from an "intentional" killing, in that the former involved a greater degree of deliberation and forethought than the latter. State v. Brown, 12 Minn. 538 (Gil. 448); State v. Hoyt, 13 Minn. 132 (Gil. 125); People v. Clark, 11 N. Y. Leg. Obs. 4, 13. In Clifford v. State, 58 Wis. 477, 17 N. W. 304, it is said in substance that a premeditated killing implies a lying in wait and settled design. In Craft v. State, 3 Kan. 450, 481, it is said in substance that the word "premeditatedly," used in defining murder, means planned, contrived, or schemed beforehand. See, also, State v. Yarborough, 39 Kan. 581, 18 Pac. 474; State v. Dale, 108 Mo. 205, 18 S. W. 976. A premeditated design under our law need not be entertained for any appreciable length of time. It may be a design formed instantly before committing the act by which it is carried into execution. Section 1735, supra. The time requisite to constitute premeditated design may not be distinguishable from the act of the killing, although it may be said to precede the act. 1 Michie, § 14 (2), p. 97; Fouts v. State, 4 G. Greene (Iowa) 500; State v. Harris, 76 Mo. 361; People v. Brunt, 11 N. Y. St. Rep. 59. Premeditation is an intent before the act of killing. It means entertainment by the mind of a design to kill, and is often defined as "thought of beforehand, any length of time, however short." However,

the word "premeditatedly" does not mean "thought of" in the sense of "thought over." 1 Michie, § 13 (1), p. 86, notes.

In the case of Ernest v. State, 20 Fla. 383, it is held:

" 'Premeditation' is defined as meaning, intent before the act, but not necessarily existing any extended time before the act. 'Premeditated design,' as used in the statutes relating to homicide, means an intent to kill, design means 'intent,' and both words imply premeditation."

The case, however, was reversed for error in the instructions.

In Radej v. State, 152 Wis. 503, 140 N. W. 21, 22, it is held:

"The premeditated design of our statutory murder in the first degree is no more nor less than mental purpose to take human life, formable on the instant preceding the fatal act or some time theretofore, it being sufficient that there be a precedent existence of the purpose and persistency of it to and inclusive of such fatal act."

The term "premeditated design," as it is used in section 1733, supra, is restricted in meaning by section 1735, supra. This section may be said to be a definition of premeditated design. Thus the premeditated design does not have that limited meaning particularly applicable to a homicide committed by poisoning or by lying in wait, but to an intentional killing, even where the intent is formed instantly before committing the act which results in death. This view is further supported by section 1736, Comp. Stat. 1921, which provides that homicide committed with a design to effect death is not the less murder because the perpetrator was in a state of anger or voluntary intoxication at the time. We are led irresistibly to the conclusion that the term "premeditated design," as the term is

used in section 1733, supra, as limited by section 1735, supra, means simply a formed intent to kill, and such intent may be formed instantly preceding the act of killing, and that the allegation of "felonious intent to kill and murder," coupled with the allegation of death "as was intended," is equivalent in meaning and of the same import as an allegation of "premeditated design."

The case is affirmed.

DAVENPORT and CHAPPELL, JJ., concur.