### GEORGE COSTON v. STATE.

198 So. 467
En Banc
Opinion Filed November 5, 1940

*H. B. S. Hammond* and *W. H. Poe,* for Appellant;

*George Couper Gibbs,* Attorney General, and *William Fisher, Jr.,* Assistant Attorney General, for Appellee.

BUFORD, J.—This case is before us on motion to dismiss and, subject to our action on the motion to dismiss, it is before us on the merits.

The motion to dismiss is grounded upon our holding in the case of Hartt v. State, filed at this term of the Court in which we held in effect that appeal as provided in the Criminal Procedure Act of 1939 was applicable procedure for review in that case.

Section 5 of Article V of the Constitution confers appellate jurisdiction on the Supreme Court of Florida in all cases of conviction of felony in the criminal courts and in all criminal cases originating in the circuit courts. Therefore, the subject matter of this cause, to-wit: the review of a conviction of a criminal charge in the circuit court, is a matter of which this Court has jurisdiction.

The transcript of the record of the conviction in the circuit court has been lodged in this Court. It is true that a praecipe for writ of error was filed in the lower court. Under this praecipe writ of error was issued and also *scire facias ad audiendum errores* was duly served on a State attorney on the Ninth Judicial Circuit of Florida and on the. Attorney General of Florida, and copy thereof with acceptance of service included in the transcript filed in this Court.

While the procedure was irregular and while it is true that under the provisions of Section 290 of Florida Criminal Procedure Act, *supra,* it is provided that appeal may be taken only by filing notice of appeal and Section 280 provides that writs of error as methods of review in crimnial causes and "writs of certiorari *ad audiendum*" are abolished,

we hold that the lodging of the transcript of the record in the trial court in this Court in substantial compliance with the provisions of the Criminal Procedure Act, *supra,* was sufficient to make effective the jurisdiction of this Court of the subject matter under the provisions of Section 5, Article V of the Constitution, and that the filing of praecipe for writ of error was a substantial compliance with the provisions requiring notice of appeal to be filed in the lower court and that the acceptance of service of *scire facias ad audiendum errores* by the State attorney and the Attorney General and the inclusion of that document with the acceptance of service thereon in the transcript is sufficient to effectuate jurisdiction in this Court of the parties.

It further appears that the parties have waived any lack of jurisdiction over them by their appearance here and the filing of briefs on the merits before any motion was made to dismiss.

Under this state of the record, and for the reasons stated, the motion to dismiss is denied.

We now come to the matter of review of the judgment on the merits.

This Court and the Circuit Court of Orange County where this cause originated and was tried, must take judicial cognizance of the existence of a Criminal Court of Record in Orange County and that therefore the Circuit Court in and for Orange County is without jurisdiction to try any criminal case under an indictment charging less than a capital offense

The defendant was placed on trial on counts one to four, inclusive, of an indictment duly returned by a grand jury.

After the jury had been selected and sworn and before any testimony was taken the following occurred:

"Mr. Hammond: We would like to have the jury excused, as we have a motion to make.

"The Court: Let the jury retire, please. (Jury retires.)

"Mr. Poe: We understand that we are going to trial on the first, second, third and fourth counts of the information.

"Mr. Overstreet: Yes.

"Thereupon the defendant made the following motion:

"Comes now the defendant and moves the court to require the State to elect between the first and second counts on the one hand, and the third and fourth counts on the other hand, for the reason that it appears that the first and second counts charge an offense not within the jurisdiction of the court.

"Upon consideration of said motion by the court, the same was denied, to which ruling the defendant then and there excepted.

"Thereupon the defendant made the following motion:

"Comes now the defendant, and moves the Court to strike from the consideration of the jury the first and second counts of the indictment, for the reason that said counts appear to charge an offense not within the jurisdiction of the Circuit Court.

"Upon consideration of said motion by the court the same was denied, to which ruling the defendant then and there excepted."

The third and fourth counts of the indictment charge murder in the first degree.

The State earnestly contends that counts 1 and 2 charge murder in the first degree because of the provisions of Section 1 of Chapter 9268, Acts of 1923, Section 7645 C. G. L., which is as follows:

"7654. Adulteration of liquors Prohibited. Penalty.— Whoever manufactures, sells, or gives away liquor intended

for beverage purposes that has been adulterated with wood alcohol, denatured alcohol, potash or other poisonous ingredients likely to cause injury, sickness or death, if swallowed, shall be deemed guilty of felony, and upon conviction thereof shall be punished by imprisonment in the State Prison for not less than one year and not more than five years, and if the death of any person shall result from drinking such liquor, the crime shall be deemed murder and be punished accordingly."

The language, "and if the death of any person shall result from drinking such liquor, the crime shall be deemed murder and be punished accordingly" is not sufficient to make the denounced act and culmination in death statutory murder in the first degree, but is merely a reaffirmance of the law as it was and would have been had such language not been used in the statute. The denounced acts may culminate in murder in any one of the several degrees and it is necessary that an indictment drawn under this statute, to be one charging murder in the first degree, must allege that the acts alleged were done from and with premeditated design to effect the death of some particular human being.

The first and second counts of the indictments are neither sufficient to charge the offense of murder in the first degree but at most might be construed as an attempt to charge the offense of murder in the second degree.

The record shows, however, that the only difference between the allegations of the several counts of the indictment here involved is that in the first count it is alleged, "with force and arms at and in the County of Orange aforesaid, unlawfully and feloniously did then and there give to one Donald Long one small glass bottle containing liquor intended for beverage purposes that had been adulterated with a poisonous ingredient likely to cause injury, sickness and death, if swallowed, commonly known as

potassium cyanide," and further, "and so the said George.
Coston did then and there unlawfully and feloniously kill.
and murder the said Marie Bayouth, also known as Dolores
Myerly, in manner and form aforesaid;" and in the second,
count it is alleged, "with force and arms, at and in the
County of Orange aforesaid, unlawfully and feloniously and·
of his malice aforethought did then and there give to one:
Donald Long one small glass bottle containing liquor in-
tended for beverage purposes that had been adulterated
with a poisonous ingredient likely to cause injury, sickness
and death if swallowed, commonly known as potassium
cyanide," and further, "and so the said George Coston did
then and there unlawfully and feloniously and of his malice
aforethought kill and murder the said Marie Bayouth, also
known as Dolores Myerly, in manner and form aforesaid;".
in the third count it is alleged, "with force and arms, at
and in the County of Orange aforesaid, unlawfully and
feloniously and from a premeditated design to effect the
death of one Donald Long did then and there give to the
said Donald Long one small glass bottle containing liquor
intended for beverage purposes that had been adulterated
with a poisonous ingredient likely to cause injury, sickness
and death, if swallowed, commonly known as potassium
cyanide," and further, "and so the said George Coston did
then and there unlawfully and feloniously and from a pre-
meditated design, kill and murder the said Marie Bayouth,
also known as Dolores Myerly, in manner and form afore-
said;" and in the fourth count it is alleged, "with force
and arms, at and in the County of Orange, aforesaid, un-
lawfully and feloniously and from a premeditated design
to effect the death of one Marie Mayouth, also known as
Dolores Myerly, did then and there give to Donald Long
one small glass bottle containing liquor intended for bever-
age purposes that had been adulterated with a poisonous

ingredient likely to cause injury, sickness and death, if swallowed, commonly known as potassium cyanide," and further, "and so the said George Coston did then and there unlawfully and feloniously and from a premeditated design to effect the death of the said Marie Bayouth, also known as Dolores Myerly, kill and murder the said Marie Bayouth, also known as Dolores Myerly, in manner and form aforesaid."

The verdict was general, reading: "We, the jury, find the defendant guilty of murder in the third degree. So say we all."

Upon count three or count four of the indictment the defendant could have been convicted of murder in the first degree or of unlawful homicide or of lesser degrees (of murder in the second degree, murder in the third degree or manslaughter), according to the sufficiency of the evidence to warrant such verdict.

There was no act or element of the offense alleged in either count one or count two of the indictment which was not alleged also in counts three and four of the indictment.

It requires exactly the same evidence under counts three and four of the indictment to warrant conviction of murder in the third degree which would have been required to convict the defendant of that degree of unlawful homicide under counts one and two of the indictment. Therefore, while it was error for the court to refuse to require the State's attorney on timely motion made to elect which counts the State would stand upon for conviction and it was error for the court after declining to require the State to make that election to deny the motion to strike counts one and two of the indictment, such error was harmless and was cured by the verdict of murder in the third degree.

The appellant relies upon the case of Cox v. State, 63

Fla. 12, 58 So. 49, to support the contention that the court was without jurisdiction to try defendant on indictment containing a count charging an offense not capital. The Cox case is to be differentiated from this case. In that case the indictment was in three counts. The first count charged murder in the first degree. The second count charged an unlawful aiding and procuring of murder. The third count charged accessory after the fact of murder. The defendant was convicted on the third count of the indictment and was, therefore, by implication, acquitted of the charges contained in the other two counts of the indictment. The court was without jurisdiction to try the defendant on the count of the indictment under which he was convicted.

In this case each of the four counts, as theretofore stated, charged the identical acts and, therefore, for the defendant to be convicted of murder in the third degree it was necessary to prove that he committed the acts alleged in each and every count of this indictment. It therefore follows that counts one and two did not place any additional burden on the defendant; nor did the allegations of these counts require the introduction by the State of either more or less evidence, or any different evidence, than that which was required to convict the defendant of murder in the third degree under either the third or fourth counts of the indictment. If counts one and two had alleged the homicide to have been committed in some other manner or by some other means than that alleged in counts three and four then there would be presented a different question and one which might require a different conclusion.

Aside from raising the point hereinbefore discussed, the appellant has stated five (5) other questions, numbered 2 to 6, inclusive, as follows:

"II. Where a witness, the alleged intended victim of a

homicide, testified that defendant was angry with him and threatened to kill him because he had refused to do certain things requested of him by defendant, was it proper for the trial court to permit the State to inquire and the witness to answer that the 'things' were not legal, and that was the reason why the witness refused to perform?"

"III. Where a witness, who claims to have been the intended victim of a homicide, testifies to threats by the defendant, is it proper to permit such witness to testify that he believed the defendant would carry out these threats?"

"IV. The State, by the allegation of the indictment and by the proof offered by it, attempted to show that the defendant, in an attempt to murder Long, gave him a bottle of whisky, adulterated with a lethal dose of potassium cyanide but, by accident, the poisoned liquor was finally drunk by Dolores Myerly, who died from the poison. Long was indicted, however, as a principal in the murder of Dolores Myerly in counts other than the ones on which defendant was tried. During their incarceration in jail, notes were passed between defendant and Long, and the notes written by defendant were delivered by Long to the sheriff. These notes were couched in very profane and obscene language, but each of them merely advised Long to not talk to the Sheriff and others suspected by defendant of an attempt to frame them, and from time to time reminded Long of certain purported facts. Each of them, according to defendant, was free of any admission, or evidence of guilty knowledge of the offense sought to be proved against him. Were the notes, or any of them, admissible in evidence against him?"

"V. When the defendant was testifying as to the exchange of notes between him and Long while in jail, he testified, 'There is no admission of any crime in any of those

notes.' Was it proper to strike said statement and instruct the jury to disregard it?"

"VI. Was this evidence in this case sufficient to sustain the verdict, or any verdict of guilty of any degree of murder?"

If any error is reflected in the matters challenged in questions No. II and III such error was cured by verdict because the matters referred to in those questions could have been effective only to show premeditated design and the verdict acquitted the defendant of a premeditated design to effect death.

Questions Numbered IV and V challenge the propriety of the action of the trial court's ruling on the admissibility of evidence. We are convinced from a consideration of the entire record that no reversible error occurred in this regard.

Question Numbered IV challenges the sufficiency of the evidence to sustain the verdict. We have carefully considered the evidence and hold that it meets the requirements as to the sufficiency of circumstantial evidence to sustain a conviction. In short, the evidence shows that the defendant procured a quantity of a deadly poison known as potassium cyanide; that he made inquiry as to how much of this drug it would require to kill a person and also learned that it could be used by being dissolved in alcoholic liquor; that later he delivered a small bottle of whisky to one Donald Long; that Donald Long, without knowing of the poisonous content in the liquor, delivered the same bottle in the same condition and with the same content to one Robert Etty and that Robert Etty, not knowing of the poisonous content in the liquor, delivered the same bottle of liquor, in the same condition in which he received it to Marie Bayouth, also known as Dolores Myerly, and that she, not knowing

the poisonous content of the liquor, drank of it and immediately died.

The record shows that her death was caused by taking into her stomach a poisonous drug and the symptoms which occurred between the time she drank the liquor and her death, which was just a few minutes later, were symptoms indicating the presence of potassium cyanide.

It is true that an expert testified that the same symptoms occur pursuant to the taking of some other poisons, but there was but one reasonable conclusion for any jury or fair minded person to reach and that was that she died from having swallowed that whisky in which there had been dissolved potassium cyanide and that the potassium cyanide was the poison which caused her death, and that that poison was placed in the whisky by the defendant.

The evidence is sufficient to support a higher degree of unlawful homicide than that of which defendant was convicted.

The judgment should be, and is, affirmed.

So ordered.

TERRELL, C. J., and WHITFIELD, J., concur.

CHAPMAN and THOMAS, J. J., agree to conclusion.

Justice BROWN not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.

CHAPMAN, J. (concurring in conclusion).—Section 5 of Article V of the Florida Constitution provides that "the Supreme Court shall have appellate jurisdiction in all cases at law and equity originating in the Circuit Court * * *." Some confusion exists among the members of the Bar as to the appellate procedure of obtaining a review in the Supreme Court in criminal cases since the enactment of the "Criminal

Code," which abolished review by the Supreme Court on writ of error.

The right of appeal and review by the Supreme Court is vouchsafed to a person convicted of crime in all suits originating in the circuit court and the method of appellate procedure can or may be regulated by the Legislature. It is my view that the Supreme Court has the inherent power under the Constitution to issue each and every writ incident and necessary to exercise that jurisdiction conferred upon it by the Constitution.

I conclude that it is within the power of the Supreme Court to consider the entire record brought here by writ of error which can or may be treated by the Supreme Court as an application for a constitutional writ of certiorari and the case heard and disposed of on its merits as provided for by Section 5 of Article V of the Constitution. The failure or omission of the Legislature to enact laws prescribing the appellate procedure cannot deprive the Supreme Court of its constitutional power to review cases originating in the circuit court.

I therefore concur in the conclusion of the opinion prepared by Mr. Justice BUFORD. I fail to find error in the record.