THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.*
PAULA REYES LARA, Defendant and Appellant.

No. CR-71-70.     Decided May 8, 1972.

*Raúl M. Olmo Olmo* for appellant. *Gilberto Gierbolini, Solicitor General,* and *Héctor R. Orlandi Gómez, Assistant Solicitor General,* for The People.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

Appellant was accused and convicted of murder in the second degree (33 L.P.R.A. §§ 631 and 633) and of the

misdemeanor of bearing, conveying, and carrying a knife, which she used to commit the offense of second-degree murder in the person of Francisco López Rivera (§ 4, Weapons Law— 25 L.P.R.A. § 414). She was sentenced to serve two years in jail for the misdemeanor and from 10 to 15 years in the penitentiary for the murder.

The evidence of the parties is correctly summarized by counsel for the defense as follows:

"The first witness for the prosecution used by the prosecuting attorney was Dr. Rafael Criado, who testified that he performed an autopsy on a body, which on that occasion was identified as corresponding to Francisco López Rivera. He attributed the cause of the death to an incised wound localized at the level of the abdomen's right quadrant, exactly over the zone where the appendix normally lies.

"Right after, Carmen Iris Velardo testified that on that day Paula, from her house, and Francisco, from downstairs, were insulting each other; that Francisco in order to open the door of Paula's house went to his own bringing with him a rod (known as a crowbar) with which he tore off the lock of the door and climbed to Paula's house were he gave her four lashes with an automobile antenna. Paula, bleeding, remained at her house while Francisco stepped down to where 'the boys were drinking.'

"They continued insulting each other, and Francisco again climbed to Paula's house. This time Francisco was carrying an open pocketknife in his hand and he brandished it two or three times at Paula. The latter, who was cooking at the time, was also 'brandishing' a knife. At that moment Carmen intervened and took Paula to a room of the house. Yet Paula escaped from her to the kitchen where Francisco knocked her to the floor stumbling on falling on the edge of a bench.

"Carmen picked up Paula who was bleeding profusely and seemed to be unconscious; took her close to the sink, where Carmen put the knife, and looked for some salt and a piece of cloth to attend to Paula.

"Hardly 4 or 5 minutes had elapsed after the blow, and while Carmen was curing Paula, the latter grabbed the knife and went

towards Francisco who was leaning on the window with his back towards Paula and wounded him.

"Martín Lebrón Sierra testified having seen the fight; and that while Paula's wounds were being washed, she went towards Francisco, who was leaning on the window looking toward the outside, and wounded him.

"The youth José Ramón Villafañe, appellant's nephew, testified for the defense. He described the events agreeing with Carmen Iris Velardo as to the manner in which she had described them. Nevertheless, he pointed out that Francisco, from the window, before being wounded, threatened Paula; that when she went towards him, he faced her. He further pointed out that hardly a minute or two had elapsed from the moment Paula received the blow to the moment she wounded Francisco."

Appellant's assignments to support her appeal are considered below.

1.—Appellant argues that the events set forth in the information do not charge an offense because it was not alleged therein that the death was caused with *malice aforethought* which is an essential element of the offense.

Unfortunately, appellant's counsel does not enlighten the court in any manner whatsoever about this question. He has limited himself to the practice of setting forth the matter which simply evinces a marked neglect in the fulfillment of his professional responsibility as an attorney.

The information challenged reads as follows:

"The aforementioned defendant PAULA REYES LARA, on or about December 8, 1968, and at Caguas, Puerto Rico, which forms part of the Superior Court of Puerto Rico, Caguas Part, Puerto Rico, unlawfully and voluntarily and with the deliberate intent to kill, showing that she had an abandoned and malignant heart, unlawfully killed the human being Francisco López Rivera, whom she assaulted and attacked with a knife, which is a weapon with which grave corporal injury or even death may be caused to a fellow creature, inflicting on him a serious puncture wound and as a result of the said received wound the aforementioned Francisco López Rivera died on December 8, 1968,

in Caguas, Puerto Rico, and that the said puncture wound was inflicted by the defendant herein Paula Reyes Lara to the today deceased FRANCISCO LÓPEZ RIVERA, with the design to kill him."

Section 199 of the Penal Code (33 L.P.R.A. § 631) provides that "Murder is the unlawful killing of a human being, with malice aforethought." According to § 201 (33 L.P.R.A. § 633) first degree murder is, among others, all wilful, deliberate, and premeditated murder, all other kinds of murder being second degree.

█ We have said that in the murder in the second degree the death is *malicious and premeditated* without there being deliberation. *People* v. *Pérez*, 84 P.R.R. 173, 177 (1961). We said in *People* v. *Torres*, 75 P.R.R. 219, 228 (1953), that in the second degree murder, *malice aforethought* is enough.

█ The term malice denotes a wrongful and intentional act without a just cause or excuse—a conscious violation of the law to the prejudice of another—(§ 559, Penal Code— 33 L.P.R.A. § 11(4)).

█ Concerning malice aforethought in cases of murder we have said that:

"The concept of malice aforethought implies the absence of just cause or excuse in taking life and implies in addition the existence of the intent to kill a fellow creature. That intent may be manifested through one of the two following elements, either of which is sufficient to determine the existence of malice aforethought, to wit (*a*) the specific intent to kill, considered as equivalent to the desire and direct, explicit and defined purpose to kill, that is, formulated precisely with the direct objective to kill [citation] or, (*b*) *the intention to do an act or inflict great bodily injury whose probable consequence is the death of a person. . . .*" *People* v. *Méndez*, 74 P.R.R. 853, 860 (1953). (Italics ours.)

Rule 35 of the Rules of Criminal Procedure provides that the statement of the essential facts of the offense charged in the information "need not follow strictly the words used in

law, but other words conveying the same meaning may be used."

According to § 200 of the Penal Code (33 L.P.R.A. § 632) malice aforethought is implied when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart. *People* v. *Díaz Alicea*, 91 P.R.R. 763, 771 (1965).

As to the question under our consideration, the Supreme Court of California, where the Penal Code contains provisions identical with those of the Penal Code of Puerto Rico, which were previously cited, has held in *People* v. *Urias*, 12 Cal. 326 (1859), that an information that alleges that appellant "feloniously did make an assault with a deadly weapon, to wit, a pistol loaded with powder and ball with intent then and there to kill . . . without any just cause or provocation, but with an abandoned and malignant heart," did not charge any offense because it did not allege premeditation or malice aforethought which is an accessory ingredient to the crime of murder, or of assault with intent to commit such crime.

In *People* v. *Schmidt*, 63 Cal. 28 (1883), it was said that malice aforethought is a necessary ingredient of the crime of murder, therefore, it should be alleged in the indictment— expressly or through words of equivalent meaning. In this case an information that alleged that appellant "willfully, wrongfully, unlawfully, intentionally, and feloniously did shoot to kill, and murdered M. Schmidt, contrary to the form, force, and effect of the statute in such case made and provided and against the peace and dignity of the State . . ." was found to be insufficient. *Coston* v. *State*, 198 So. 467 (Fla. 1940). See, also, *State* v. *Robinson*, 78 So. 933 (La. 1918); *Pinson* v. *State*, 2 So.2d 339 (Ala. 1941). In *People* v. *Vance*, 21 Cal. 400 (1863), it was held that the terms "wilfully, maliciously, feloniously, and premeditatedly" were equivalent to "malice aforethought."

■ In *Basham* v. *State*, 287 P. 761 (Okla. 1930), an information charging the killing of a human being with a shotgun "willfully, wrongfully, unlawfully, intentionally and feloniously" was upheld because these last terms have a similar meaning to the term "premeditated design" used in the statute. It was likewise said in *Anderson* v. *State*, 5 Ark. 444 (1843), that the terms "voluntarily and wickedly" were equivalent to "malice aforethought."

We said in *People* v. *Díaz Breijo*, 97 P.R.R. 62 (1969), that it is an unavoidable requirement of the due process of law for the information to contain the elements of the offense with which defendant is charged. *People* v. *De Jesús Rosado*, *ante*, p. 535.

■ The information in the case at bar alleges that appellant killed López Rivera inflicting on him a puncture wound with a knife that caused his death; that the act was performed on a specific date and place "unlawfully and voluntarily . . . with the deliberate intent to kill, showing that she had an abandoned and malignant heart . . . with the design to kill him."

There is no doubt that if the terms "maliciously" or "premeditated" had been used in the information, the latter would not have been subject to attack. Of course, the use of these terms in addition to the other facts constituting the offense, constitutes the most precise and effective manner of alleging the offense of murder.

■■ In our opinion, nevertheless, the terms, as a whole, used in the information have a meaning equivalent to malice aforethought inasmuch as many of them constitute elements of malice or of premeditation. The intent and design to kill a specific person, unlawfully and voluntarily was alleged. These are elements of malice. The allegation "showing that she had an abandoned and malignant heart" is equivalent to the allegation of implied premeditation.

We conclude therefore that the information charges the offense of second degree murder.

2.—Appellant assigns that the trial court erred in admitting evidence about appellant's previous convictions for the commission of misdemeanors of simple assault and battery, aggravated assault and battery, carrying weapons, aggravated assault and battery, carrying forbidden weapons, and breach of the peace. We agree.

The incident which gave rise to this assignment started at the end of the evidence for the defense when the latter presented in evidence, without the prosecuting attorney's objection, two judgments from the Caguas District Court sentencing the defendant to serve six months in jail for the offenses of aggravated assault and battery and carrying weapons "for having attempted against the defendant." When the hearing was resumed five days later, the defense requested that that evidence be not accepted "inasmuch as . . . has had knowledge that said cases were pending appeal and since these judgments are not final . . . we cannot admit them in evidence and, therefore, we are going to request that they be withdrawn as evidence." The prosecuting attorney objected ". . . because he is precluded from acting against his own acts, a thing which he himself has introduced . . . it has been said before the jury . . . that he was bringing those two judgments to establish the dangerousness of Francisco López Rivera in the sense that as a result of having offered the said two judgments, it was established before this court that he was a dangerous man." The defense denied having introduced those cases for that purpose. It added that ". . . we brought oral evidence of specific acts of violence of this man Francisco López Rivera against the defendant specifically. We have not said at any moment that this man Francisco López is a dangerous person nor that he is a dangerous person against other persons, but that there were specific acts of violence on the part of Francisco López Rivera against the defendant

in this case. That was all we sought to bring out and all that we introduced in evidence. That is, we did not comment on any occasion against the dangerousness of this person." The prosecuting attorney finally alleged that from the record of said cases it appeared that they had been dismissed. The court consented to the withdrawal of those documents. Immediately the prosecuting attorney proceeded to offer as evidence in rebuttal, evidence of appellant's dangerous character relying on *People* v. *Cruz*, 65 P.R.R. 160, 168 (1945). This evidence consisted of cases in which appellant was convicted and fined and sentenced to serve terms in jail for the offenses of simple assault and battery, three cases of aggravated assault and battery, several of carrying weapons, and one for the breach of the peace. The court admitted that evidence because ". . . these cases maintain that any intent or evidence of character or conduct of the deceased opens the door for the prosecuting attorney to introduce the same class of evidence on the part of the other party, on the part of the defendant . . . . With the additional reason of *People* v. *Rodríguez*, 66 P.R.R. 302, 310, *People* v. *Rodríguez*, the additional reason that these acts may be introduced to show a deliberate scheme or intent, or predisposition, and even the case of *People* v. *Archeval*, refers to exception, even applying to it that case and for the reasons previously stated, the evidence is admitted." The defense objected to the admission of the foregoing evidence on the ground that the defense had not introduced evidence of the deceased's dangerousness; that it only sought to establish that on various occasions the victim attacked appellant during the incident that culminated in his death.

■ As a general rule evidence of other offenses committed by the defendant is inadmissible. *People* v. *Rodríguez*, 66 P.R.R. 302, 310 (1946). It is admissible, nevertheless, by way of exception under the following circumstances:

■ I—When it concerns similar transactions contemporaneous with the facts of the offense charged; in this case evidence of another offense is admitted to show a deliberate scheme or intent to defraud. In the case at bar we are not concerned with such transactions or purposes.

II—The former offense (a) is a material fact to establish the commission of the crime charged; (b) it is a part of the *res gestae;* (c) it shows motive, intent, premeditation, malice or a common plan, and (d) forms part of the same transaction. *People* v. *Martínez Lucena,* 92 P.R.R. 859, 862 (1965). Obviously, the purpose in introducing evidence of appellant's previous offenses was not any of these inasmuch as the prosecuting attorney informed that it concerned evidence of appellant's dangerousness to rebut the evidence introduced by the defense as to the deceased's dangerousness.

III—Evidence of prior felonies, as part of defendant's cross-examination; and, if the defendant opens the door to his past and testifies to show his good reputation, evidence of any previous offense is admissible to challenge his credibility. *People* v. *Iturrino de Jesús,* 90 P.R.R. 687, 692 (1964); *People* v. *Archeval,* 74 P.R.R. 478, 483, 484, 485 (1953). Since appellant did not testify and no evidence of her reputation was introduced, the evidence of her previous convictions was not admissible under this exception.

■ IV—When self-defense is involved, defense which was alleged by appellant from the commencement of the trial in the case at bar, (a) where there is conflict as to the question of whether the defendant or the victim was the aggressor; (b) when the defendant seeks to prove that when he killed the victim he had real or apparent reason to believe, considering the dangerous character of the victim, that upon being attacked by the latter he was in imminent danger of losing his life or of receiving serious bodily injury in the first case. As to the second case marked (b), the defendant

must prove that he had knowledge of these violent acts prior to the encounter. *People* v. *García García*, 98 P.R.R. 808, 814–815 (1970) ; *People* v. *Cruz*, *supra* at p. 166—the admission of such evidence rests on the sound discretion of the court. *People* v. *Rivera*, 67 P.R.R. 259, 265 (1947).

■ The parties introduced oral evidence of the repeated aggressions by the victim of the murder on the person of appellant provoked by the offensive and obscene insults which they mutually proffered to each other, all of which culminated in the attack by appellant to the victim with a knife with which she wounded him causing his death. Even though the two cases against the victim of the murder of the offenses of assault and battery and of carrying weapons had the effect of propitiating the establishment of the deceased's dangerousness, in fact the evidence was withdrawn and the judge charged the jury not to take it into consideration. It results, then, that there was no justification to rebut this evidence which no longer appeared in the record. The prosecuting attorney could rebut the oral evidence of the aggressions by the victim upon appellant's person during the quarrel between them, that resulted in the victim's death, with similar evidence to the contrary if he had had it available. But this did not justify the introduction of evidence of previous convictions for offenses of violence committed by appellant particularly when she did not testify, nor any evidence of her good reputation was adduced.

From the foregoing we conclude that the court erred not only in admitting the evidence of appellant's previous convictions of offenses of violence but also in referring to the same on its report to the jury immediately after summarizing the testimony of Martín Lebrón Sierra, witness for the prosecution, to the effect that the deceased "was a person of good character, dedicated to work, who did not quarrel in the ward ... that they would get friendly and look for each other and

were generally quarreling among themselves," after which he added:

"Then the testimony of the Clerk of the Caguas District Court was brought to us, and he talked to us about the defendant-lady's convictions of simple assault and battery, conviction of aggravated assault and battery, conviction for different offenses, another of weapons, also a conviction for one year, another of one year for carrying weapons, another of assault and battery."

In view of what has been set forth we conclude that the admission of appellant's prior convictions prejudiced her rights seriously.

3.—Appellant assigns that the trial court erred in not charging the jury as to the prosecuting attorney's aims in introducing in evidence proof of defendant-appellant's convictions.

In view of our foregoing conclusion it is unnecessary to consider this assignment.

4.—The instruction on voluntary manslaughter is challenged, for being confusing and insufficient; that the trial judge should have charged the jury that the nature and circumstances of the provocation, the nature of the act, and the extent to which the passion reached are elements to be assayed upon weighing the reasonable time, and that it has not been possible to fix that reasonable time to a precise instant but depends on all the circumstances of the specific case.

The instruction in question was the following:

". . . It is voluntary manslaughter when it occurs upon a sudden quarrel or heat of passion, but in order to reduce the offense from murder to voluntary manslaughter a circumstance or a provocation, a heat of passion, a quarrel sufficient to produce a sudden irresistible passion in a person of ordinary self-control must mediate. To reduce a case to manslaughter, the heat of passion must have occurred while the killer acted on the spur of the moment or under the immediate and direct

influence of the quarrel or the heat of passion. When it can be inferred beyond any doubt that what such circumstance, the heat of passion, the quarrel or the statements caused, because if it caused something some time has already elapsed, that that no longer confuses defendant's mind, that sufficient time has elapsed to put an end to that situation, that enough time has elapsed to control her reasoning and for it to control her conduct and acts, then such heat of passion does not justify the classification of the offense. The issue to be settled is as to whether a cooling and normality, serenity period has elapsed; if normality has returned, and that normality is measured by what it would take a person of moderate prudence to calm down. Heat of passion has to obscure the mind because if it is afterwards, irrespective of the injurious words, the abuse, if some time elapsed and some cooling occurs, what happens then is not the occurrence of heat of passion, it may then be the result of vengeance, of passion, of malice."

The defense neither objected to nor timely requested any modification of this instruction.

█ Although the instruction is not as precise and succinct as the one which we approved in *People* v. *Román Marrero,* 96 P.R.R. 777, 781, 782 (1968), it contains all the necessary elements to instruct the jury about the offense of voluntary manslaughter. The fact that in defining the cooling period the term "person of moderate prudence" was used instead of the precise and correct term of "average man or ordinary and reasonable person," we do not believe that it affected any of appellant's substantial rights whatsoever.

█ 5.—Appellant is right in challenging her conviction for violation of § 4 of the Weapons Law.

In this case, as in *People* v. *Cruz Collazo,* 95 P.R.R. 638, 641, 644 (1968), there was no evidence of the conveying and carrying of the knife but there was of its use against another person. This second modality was passed upon by the jury's verdict as a result of the second-degree murder charge.

For the reasons stated, we conclude that the judgments rendered in this case by the Superior Court, Caguas Part,

on May 20 and 29, 1969, must be reversed and the case remanded for new trial.

Mr. Chief Justice Negrón Fernández took no part in the decision of this case.