EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* PAULA REYES LARA, acusada y apelante.

Número: CR-71-70          Resuelto: 8 de mayo de 1972

*Raúl M. Olmo Olmo,* abogado del apelante; *Gilberto Gierbolini, Procurador General,* y *Héctor R. Orlandi Gómez, Procurador General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del Tribunal.

La apelada fue acusada y convicta de asesinato en 2do. grado (33 L.P.R.A. secs. 631 y 633) y del delito menos grave de portar, conducir y transportar un cuchillo el cual utilizó en la comisión de un delito de asesinato en 2do. grado en la persona de Francisco López Rivera (Art. 4 Ley de Armas— 25 L.P.R.A. sec. 414). Fue condenada a cumplir las penas de 2 años de cárcel por el delito menos grave y 10 a 15 años de presidio por el asesinato.

La prueba de las partes la resume la representación legal de la defensa correctamente así:

"El primer testigo de cargo en ser utilizado por el fiscal lo fue el Dr. Rafael Criado, quien aseveró haberle practicado la autopsia a un cuerpo, el cual fuera identificado en esa ocasión como el correspondiente al señor Francisco López Rivera. Atribuyó la causa de la muerte a una herida cortante localizada al nivel cuadrante superior derecho del abdomen, justamente encima de la zona donde normalmente queda el apéndice.

A continuación, la señora Carmen Iris Velardo declaró que ese día doña Paula, desde su casa y don Francisco, desde abajo, se insultaban mutuamente; que don Francisco para abrir la puerta de la casa de doña Paula fue a la suya propia trayendo consigo una barra (conocida como pata de cabra) con la cual descerrajó la puerta, y subió a casa de doña Paula donde le dio cuatro fuetazos con una antena de carro. Doña Paula, sangrando, se quedó en su casa mientras don Francisco bajó a donde estaban 'los muchachos bebiendo'.

Siguen insultándose, y don Francisco vuelve a subir a casa de doña Paula. Esta vez don Francisco llevaba una cuchilla abierta en la mano con la cual 'le tiró' dos o tres veces a doña Paula. Esta, que se encontraba cocinando para ese entonces, también 'tiraba' con un cuchillo. En ese momento doña Carmen interviene y se lleva a doña Paula a un cuarto de la casa. Sin embargo doña Paula se le escapa hacia la cocina donde don Francisco le propina un golpe que la tumba, tropezando a caer con el borde de un banco.

Doña Carmen recoge a doña Paula quien sangra profusamente y aparenta estar inconsciente; la acerca al fregadero, donde doña Carmen pone el cuchillo; y busca sal y un paño para atender a doña Paula.

A penas transcurridos 4 ó 5 minutos del golpe, y mientras doña Carmen curaba a doña Paula, ésta coge el cuchillo y dirigiéndose a don Francisco, quien está recostado sobre la ventana de espaldas a doña Paula, le hiere.

Don Martín Lebrón Sierra declaró haber presenciado la pelea; y que cuando le lavaban las heridas a doña Paula, ésta se dirigió hacia don Francisco, quien estaba recostado en la ventana mirando hacia afuera, y le hirió.

Por la defensa declaró el joven José Ramón Villafañe, sobrino de la apelante. Este narró los hechos en concordancia a como los había narrado la señora Carmen Iris Velardo. No obstante

apuntó que don Francisco, desde la ventana y antes de ser herido, amenazaba a Doña Paula; que al ésta dirigirse hacia él, éste último se le enfrentó. Apuntó además que apenas transcurrió un minuto o dos desde el momento en que doña Paula recibe el golpe y el momento en que hiere a don Francisco."

Los apuntamientos de la apelante en apoyo de su apelación se consideran a continuación.

1.—Arguye la apelante que los hechos relacionados en la acusación no imputan delito porque no alegó en la misma que la muerte se realizó con *malicia premeditada* lo que es un elemento esencial del delito.

Desafortunadamente la representación legal de la apelante no ilustra en forma alguna al tribunal sobre esta cuestión. Se ha limitado a la práctica de plantear la cuestión lo cual simplemente evidencia una marcada dejadez en el cumplimiento de la responsabilidad profesional del letrado.

La acusación impugnada lee así:

"La referida acusada PAULA REYES LARA, allá en o para el día 8 de diciembre de 1968 y en Caguas, Puerto Rico, que forma parte del Tribunal Superior de Puerto Rico, Sala de Caguas, Puerto Rico, ilegal y voluntariamente y con deliberado propósito de matar, demostrando tener un corazón pervertido y maligno, dio muerte ilegal al ser humano Francisco López Rivera, al cual acometió y agredió con un cuchillo, que es un arma con la cual puede causarse grave daño corporal y hasta la muerte a un semejante, infiriéndole una herida punzante de carácter grave y a consecuencia de dicha herida recibida, falleció el mencionado Francisco López Rivera el día 8 de diciembre de 1968 en Caguas, Puerto Rico, y que dicha herida punzante fue inferida por la aquí acusada PAULA REYES LARA al hoy interfecto FRANCISCO LÓPEZ RIVERA, con la intención de matarlo."

El Art. 199 del Código Penal (33 L.P.R.A. sec. 631) dispone que "Asesinato es dar muerte ilegal a un ser humano con malicia y premeditación." Según el Art. 201 (33 L.P.R.A. sec. 633) es asesinato en primer grado, entre otros, toda muerte alevosa, deliberada y premeditada, siendo de 2do. grado todos los demás.

■ Hemos dicho que en el asesinato en 2do. grado la muerte es *maliciosa y premeditada* sin que medie deliberación. *Pueblo* v. *Pérez Martínez*, 84 D.P.R. 181, 184 (1961). Dijimos en *Pueblo* v. *Torres*, 75 D.P.R. 231, 240 (1953) que en el asesinato en 2do. grado basta la *malicia premeditada.*

■ La expresión malicia denota un acto dañoso, intencional, sin justa causa o excusa—la esciente infracción de la ley en perjuicio de otro—(Art. 559 Código Penal—33 L.P.R.A. sec. 11(4)).

■ Con respecto a malicia premeditada en casos de asesinato hemos dicho que:

"El concepto de malicia premeditada implica la ausencia de justa causa o excusa al ocasionar la muerte e implica además la existencia de la intención de ocasionar la muerte de un semejante.

Esa intención se puede manifestar a través de uno de los dos siguientes elementos, cualquiera de los cuales es suficiente para determinar la existencia de malicia premeditada, a saber, (a) la intención específica de matar, considerada como equivalente al deseo y propósito directo, explícito y definido de matar, o sea, precisamente formulado con el objetivo directo de matar [cita], o, (b) *con la intención de realizar un acto o de producir grave daño corporal cuya consecuencia probable sea la muerte de una persona . . . ." Pueblo* v. *Méndez,* 74 D.P.R. 913, 921–922 (1969) (Énfasis en el original.)

Dispone la Regla 35 de las de Procedimiento Criminal que la exposición de los hechos esenciales del delito en la acusación "no tendrá que emplear estrictamente las palabras usadas en la ley y podrá emplear otras que tuvieren el mismo significado."

De acuerdo con el Art. 200 del Código Penal (33 L.P.R.A. sec. 632) la premeditación es tácita cuando no resulta notable provocación, o las circunstancias que concurren en la muerte demuestran un corazón pervertido y maligno. *Pueblo* v. *Díaz Alicea,* 91 D.P.R. 786, 794 (1965).

Sobre la cuestión que nos ocupa, el Tribunal Supremo de

California, donde el Código Penal contiene disposiciones idénticas al de Puerto Rico previamente citadas, ha resuelto en *People* v. *Urias*, 12 Cal. 326 (1859) que una acusación que alega que el apelante "alevosamente asaltó con un arma mortal, es decir, una pistola cargada con pólvora y bala con la intención de allí y entonces matar al . . . sin justa causa o provocación pero con un corazón pervertido y maligno", no imputaba delito porque no alegó premeditación o malicia premeditada que es un ingrediente accesorio del delito de asesinato o de asalto con la intención de cometer tal crimen.

En *People* v. *Schmidt*, 63 Cal. 28 (1883), se dijo que la malicia premeditada es un ingrediente necesario del crimen de asesinato, de manera que debe alegarse en la acusación—bien expresamente o mediante palabras de significado equivalente. En este caso se encontró insuficiente una acusación que alegaba que el apelante "voluntaria, ilegal, intencional y alevosamente (*willfully, wrongfully, unlawfully, intentionally and feloniously*) disparó a matar y asesinó a M. Schmidt, contrario a la forma, vigencia y efecto del estatuto para tal caso provisto y promulgado y contra la paz y dignidad del Estado . . . ." *Coston* v. *State*, 198 So. 467 (Fla. 1940). Véanse, además, *State* v. *Robinson*, 78 So. 933 (La. 1918); *Pinson* v. *State*, 2 So.2d 339 (Ala. 1941). En *P.* v. *Vance*, 21 Cal. 400 (1863), se resolvió que los términos "voluntaria, maliciosa, alevosa y premeditamente" equivalían a "malicia premeditada".

En *Basham* v. *State*, 287 Pac. 761 (Okla. 1930), se sostuvo una acusación de matar a un ser humano con una escopeta "con intención ilegal, alevosa, voluntaria, ilegal e intencionalmente" (*willfully, wrongfully, unlawfully, intentionally and feloniously*) porque estos últimos términos tienen un significado similar al término "propósito premeditado" usado en el estatuto. Asimismo se dijo en *Anderson* v. *State*, 5 Ark. 444 (1843) que los términos "voluntaria y perversamente" equivalían a "malicia premeditada".

Dijimos en *Pueblo* v. *Díaz Breijo*, 97 D.P.R. 64 (1969) que es requisito ineludible del debido procedimiento de ley que la acusación contenga los elementos del delito que se imputa al acusado. *Pueblo* v. *De Jesús Rosado*, 100 D.P.R. 536 (1972).

■ La acusación en el caso que nos ocupa alega que la apelante mató a López Rivera infiriéndole una herida punzante con un cuchillo que le ocasionó la muerte; que el acto se realizó en determinada fecha y sitio "ilegal y voluntariamente . . . con deliberado propósito de matar, demostrando tener un corazón pervertido y maligno . . . con la intención de matarlo."

No hay duda que si se hubiese usado el término "maliciosamente" o "premeditadamente" en la acusación ésta no hubiera estado sujeta a ataque. Por supuesto que el uso de estos términos en adición a los otros hechos constitutivos del delito constituyen la forma más precisa y efectiva de imputar el delito de asesinato.

■ A nuestro juicio, sin embargo, el conjunto de términos usados en la acusación tienen un significado equivalente a malicia premeditada pues muchos de ellos constituyen elementos de la malicia o de la premeditación. Se alegó la intención y el propósito de matar a determinada persona, ilegal y voluntariamente. Estos son elementos de la malicia. La alegación "demostrando tener un corazón pervertido y maligno" es equivalente a la alegación de premeditación tácita.

Concluimos por lo tanto que la acusación imputa el delito de asesinato en segundo grado.

2.—Apunta la apelante que el tribunal de instancia incidió al admitir prueba sobre convicciones de la apelante por la comisión de delitos menos graves de acometimiento y agresión simple, acometimiento y agresión grave, portar armas, acometimiento y agresión grave, portar armas prohibidas y perturbar la paz. Tiene razón.

El incidente que motiva este apuntamiento comenzó al finalizar la prueba de la defensa cuando ésta ofreció en evi-

dencia, sin objeción del fiscal, dos sentencias del Tribunal de Distrito de Caguas condenando al acusado a la pena de seis meses de cárcel por los delitos de acometimiento y agresión grave y por portar armas "por haber emprendido en contra de la acusada." Al reanudarse la vista del caso cinco días después, solicitó la defensa que no se aceptase esa prueba "ya que . . . ha tenido conocimiento de que esos casos estaban en apelación y no siendo estas sentencias firmes . . . no podemos admitir en evidencia, y por lo tanto, vamos a pedir que se retiren como prueba." Se opuso el fiscal ". . . porque él está impedido contra sus propios actos actuar una cosa que él mismo ha presentado . . . se ha dicho ante el jurado . . . que él traía esas dos sentencias para establecer la peligrosidad de Francisco López Rivera en el sentido de que por haber ofrecido esas dos sentencias se establecía ante este Tribunal que él era un hombre peligroso." La defensa negó que hubiese traído esos casos con ese propósito. Añadió que ". . . trajimos prueba testifical de actos específicos de violencia en contra de este señor Francisco López Rivera contra la acusada específicamente. Nosotros en ningún momento hemos dicho que este señor Francisco López, sea una persona peligrosa, ni que sea una persona peligrosa contra otras personas, sino que hubo actos específicos de violencia de parte de Francisco López Rivera contra la acusada en este caso. Eso es todo lo que pretendimos traer y todo lo que trajimos en evidencia. O sea, no hablamos en ningún momento contra la peligrosidad de esta persona." Alegó por último el fiscal que del récord de esos casos aparecía que los mismos se habían archivado. El tribunal permitió retirar esos documentos. Enseguida el fiscal procedió a ofrecer como prueba de refutación, prueba de la peligrosidad de la apelante, basándose en *Pueblo* v. *Cruz*, 65 D.P.R. 172, 180 (1945). Esta prueba consistió en casos en que la apelante fue convicta y sentenciada a multa y a términos de cárcel por los delitos de acometimiento y agresión simple, tres casos de acometimiento y agresión grave, varios

de portar armas y uno de perturbar la paz. El tribunal admitió esa prueba porque ". . . estos casos sostienen que cualquier intento o prueba de carácter o conducta del interfecto abre las puertas al Ministerio Público para traer prueba de la misma clase por parte de la otra parte, por parte del acusado. . . . Con la razón adicional de *Pueblo* v. *Rodríguez*, 66 D.P.R. pág. 317, página específica 324, *Pueblo* v. *Rodríguez*, la razón adicional de que se pueden traer estos actos para demostrar la intención, propensión e inclinación preconcebida, y aún el *Pueblo* v. *Archeval*, habla de excepción, aún aplicándole ese caso y por las razones aducidas anteriormente, se admite la evidencia." La defensa objetó la admisión de la anterior prueba basándose en que la defensa no había traído prueba de la peligrosidad del occiso; que solo trató de probar que la víctima en varias ocasiones agredió a la apelante durante el suceso que culminó con su muerte.

■ Como regla general no es admisible prueba de otros delitos cometidos por el acusado. *Pueblo* v. *Rodríguez*, 66 D.P.R. 317, 324 (1946). Es admisible, sin embargo, por vía de excepción, bajo las siguientes circunstancias:

■ I.—Cuando se trata de transacciones similares coetáneas con los hechos del delito imputado en la acusación; en este caso la prueba de otro delito se admite para probar un plan preconcebido o la intención de defraudar. En el caso ante nos no se trata de tales transacciones ni de tales propósitos.

II.—El delito anterior (a) es un hecho pertinente para establecer la comisión del crimen por el cual se juzga; (b) forma parte del *res gestae;* (c) puede demostrar motivo, premeditación, malicia o un designio común y (d) forma parte de la misma transacción. *Pueblo* v. *Martínez Lucena*, 92 D.P.R. 881, 883 (1965). Obviamente el propósito de ofrecer prueba de los delitos anteriores de la apelante no era uno de éstos pues el fiscal informó que se trataba de prueba de la peligro-

sidad de la apelante como refutación de la aducida por la defensa de la peligrosidad del occiso.

III.—Prueba de anteriores delitos graves, como parte del contrainterrogatorio del acusado; y, si éste abre la puerta a su pasado y declara con el propósito de establecer su buena reputación, prueba de cualquier delito anterior es admisible para impugnar su veracidad. *Pueblo* v. *Iturrino de Jesús*, 90 D.P.R. 706, 711 (1964); *Pueblo* v. *Archeval*, 74 D.P.R. 512, 516, 517, 518 (1953). Como la apelante no testificó ni hubo prueba de su reputación, la prueba de sus convicciones anteriores no era admisible bajo esta excepción.

IV.—Cuando está envuelta la defensa propia, defensa que se alegó desde el comienzo del juicio por la apelante en el caso ante nos, (a) cuando está en controversia si la agresión partió del acusado o de la víctima; (b) cuando el acusado trata de probar que al dar muerte a la víctima tenía motivo real o aparente para creer, considerando el carácter peligroso de la víctima, que al ser atacada por ésta se hallaba en peligro inminente de perder la vida o recibir grave daño corporal en el primer caso. En cuanto al segundo caso marcado (b), el acusado tiene que probar que tenía conocimiento de estos actos de violencia con anterioridad al encuentro, *Pueblo* v. *García García*, 98 D.P.R. 827, 833 (1970); *Pueblo* v. *Cruz*, supra, a la pág. 178—la admisión de tal prueba descansa en la sana discreción del tribunal. *Pueblo* v. *Rivera*, 67 D.P.R. 280, 286 (1947).

Las partes adujeron prueba testimonial de las repetidas agresiones del interfecto en la persona de la apelante provocadas por los insultos hirientes y obscenos que mutuamente se proferían todo lo cual culminó con el ataque de la apelante al interfecto con un cuchillo con el cual le hirió produciéndole la muerte. Aunque los dos casos en contra del interfecto de delitos de acometimiento y agresión y de portar arma tuviesen el efecto de propiciar el establecer la peligrosidad del

occiso, de hecho la prueba fue retirada, y el juez instruyó al jurado que no la tomase en consideración. Resulta, pues, que no hubo justificación para rebatir esta prueba que ya no constaba en el récord. El fiscal sí podía rebatir la prueba testifical de las agresiones de la víctima en la persona de la apelante durante la reyerta entre ambos que culminó con la muerte de aquélla, con prueba similar en sentido contrario si la hubiese tenido disponible. Pero esto no justificaba traer prueba de convicciones anteriores por delitos de violencia cometidos por la apelante máxime cuando ella no testificó, ni se adujo prueba de su buena reputación.

Concluimos de lo expuesto que incidió el tribunal no tan sólo al admitir la prueba de las convicciones anteriores de la apelante de delitos de violencia sino al hacer referencia a las mismas en su informe al jurado inmediatamente después de resumir el testimonio del testigo de cargo Martín Lebrón Sierra al efecto de que el occiso "era una persona de buen carácter, que se dedicaba a trabajar, que no peleaba en el barrio . . . que ellos se contentaban y se buscaban y que generalmente estaban peleando entre sí.", luego de lo cual añadió:

"Luego se nos trajo la declaración del Secretario del Tribunal de Distrito de Caguas, quien nos habló de convicciones de la dama acusada de acometimiento y agresión simple, convicta de acometimiento y agresión grave, convicta de distintas penas, otra de arma, convicta también una de un año, otra de portar armas por un año, otra de acometimiento y agresión."

En vista de lo expuesto concluimos que la admisión de las anteriores convicciones de la apelante perjudicó gravemente sus derechos.

3.—Apunta el apelante que el tribunal sentenciador incidió al no instruir al jurado sobre el fin que perseguía el fiscal al presentar en evidencia prueba de las convicciones de la acusada-apelante.

En vista de nuestra anterior conclusión resulta innecesario considerar este apuntamiento.

■ 4.—Se impugna la instrucción sobre homicidio voluntario por ser confusa e insuficiente; que el juez sentenciador debió instruir al jurado que la naturaleza y circunstancias de la provocación, el carácter del acto y el extremo a que llegó la pasión son elementos a aquilatarse al apreciar el tiempo razonable, y que ese tiempo razonable no ha podido fijarse en un momento preciso sino que depende de todas las circunstancias del caso específico.

La instrucción en cuestión fue la siguiente:

". . . Es homicidio voluntario cuando ocurre con ocasión de una súbita pendencia o arrebato de cólera, pero para reducir el delito de asesinato a homicidio voluntario debe mediar una circunstancia o una provocación, un arrebato de cólera, una pendencia suficiente para producir una pasión irresistible momentánea de una persona de ordinario dominio de sí misma. Para rebajar un caso a homicidio, el arrebato de cólera debe haber ocurrido mientras el matador actuaba de inmediato o bajo influencia directa e inmediata de la riña o de la cólera. Cuando tal circunstancia, la cólera, la riña o las palabras aseveradas se puedan deducir fuera de duda lo que ella causó porque si lo causó ya pasó un tiempo que ya aquello dejó de obscurecer la mente de la acusada, que ha transcurrido tiempo suficiente para terminar aquella situación, ya ha habido tiempo suficiente para que su razón se controle y para que la razón controle también su conducta y sus actos, ya que tal cólera no justifica la clasificación del delito. El punto a resolver es en cuanto si ha transcurrido término de enfriamiento y de normalidad, serenidad; si la normalidad ha vuelto, y esa normalidad se mide por lo que ello tomaría a una persona de moderada prudencia. La cólera tiene que ser aquella que oscurece la mente porque si es después no importan las palabras injuriosas, no importa el abuso, si pasa algún tiempo y ha pasado algún enfriamiento, lo que pasa después ya no es ocurrencia de la cólera, y puede ser ocurrencia de la venganza, de la pasión, de la malicia."

La defensa no objetó ni solicitó modificación alguna de esta instrucción oportunamente.

■ Si bien la instrucción no es tan precisa y sucinta como la que aprobamos en *Pueblo* v. *Román Marrero*, 96 D.P.R. 796, 800, 801 (1968), contiene todos los elementos necesarios par informar al jurado sobre el delito de homicidio voluntario. El hecho de que al definir el período de enfriamiento se usara el término "persona de moderada prudencia" en lugar del término preciso y correcto de "hombre promedio o persona ordinaria y razonable", no creemos que afectó derecho sustancial alguno de la apelante.

■ 5.—Tiene razón la apelante al impugnar su convicción por la infracción al Art. 4 de la Ley de Armas.

En este caso, como en *Pueblo* v. *Cruz Collazo*, 95 D.P.R. 651, 654, 657 (1968), no hubo prueba de la portación y conducción del cuchillo y sí de su uso contra otra persona. Esta segunda modalidad quedó juzgada por el veredicto del jurado con motivo de la acusación de asesinato en 2do. grado.

Por las razones anteriores concluimos *que deben revocarse las sentencias dictadas en este caso por el Tribunal Superior, Sala de Caguas, en 20 y 29 de mayo de 1969 y devolverse el caso para nuevo juicio.*

El Juez Presidente, Señor Negrón Fernández, no intervino.